All right. Mr. Rognaby, please proceed. Thank you, your honors. May it please the court, counsel. My name is Monty Rognaby, and I represent the defendant, Rene Johnson. And Ms. Johnson appeals from her conviction, and the basis of the appeal is a violation of the Speedy Trial Act, and also her rights under the Sixth Amendment. Now, by way of background, there were four continuances in this matter, and these continuances all contributed to the violations that we're claiming. But without waiving all of our arguments for the purposes of today's appeal, I want to focus on the fourth and final continuance. So the begin in this case on September 15th, 2017, when Ms. Johnson made her first appearance. The matter was set for a three-day jury trial. Everybody agrees that 39 days passed under the act before there was any triggering event which might toll the counting of days. And that triggering event was a motion on October 24th for discovery made by Ms. Johnson's counsel. Subsequently, there were three orders for a continuance under 3161 H7A, ends of justice. And we have some arguments concerning some of those continuances. But the third continuance under the ends of the act was to reschedule the trial from three days to 10 days. Due to some discovery issues, initially, they thought three days would be sufficient. Ultimately, after they got into all the documents, they realized they were going to need 10 days. So if you look at docket number 40, after the court's third order to reschedule, the court scheduled this matter for a 10-day jury trial starting on August 6, 2018. So for the purposes of my argument, there were 39 days under the Speedy Trial Act. There was a triggering event and taking the facts. Excuse me, counsel, that order for a 10-day trial, that was at the joint request of the parties, is that right? Your Honor, I don't think so. There is no record of that proceeding. Mr. Nodland, who represented Ms. Johnson throughout the proceeding, his position as expressed in the briefs was that she had not requested or joined in any request for a continuance. But for purposes of this fourth and final continuance, the rationale for the third is not, I believe, relevant. Taking the facts in the best way possible for the government, there were 39 days, there was a triggering event, and then there was a trial to begin on August 6. Subsequently, after that trial, that 10-day trial was scheduled, Judge Hovland sua sponte issued a fourth order in which he rescheduled the trial for beyond the time allowed under the Speedy Trial Act. So the question that is before this was, obviously, the court had the discretion to reschedule the trial. The question is whether or not the time between August 6, 2018, and the start of the trial in October, whether that time should be excluded for computing the Speedy Trial 70 days. I think it's undisputed that if that fourth order for continuance, if the time after August 6 is not excluded, then there has been a violation of the Speedy Trial Act. And under the law, then this court would have to reverse and either send it back with direction for the trial judge to determine whether the dismissal is with prejudice or without prejudice, or exercise discretion and send it back with direction to dismiss with prejudice. So the question really is, what did Judge Hovland say on the record concerning the fourth continuance? In the judge's order, the judge indicates that, quote, scheduling conflicts have arisen involving other obligations. And as part of the subsequent order on Ms. Johnson's motion to dismiss, the Judge Hovland again indicated there were scheduling conflicts. And this is what the next line is what the government hangs its hat on, which is based on request for extended trial. So this really is, your honors, is a pretext. The court in the third order rescheduled the trial for 10 days. Then as that date got closer and closer, the court rescheduled the case again. And the only rationale besides general congestion is a reference back to what justified the third continuance, was the change from three days of trial to four days of trial. Now, the case law in this area suggests and holds that the reasons given for a speedy trial continuance need to be the actual reasons. And if the court looks at Judge Hovland's on-the-record comments at the trial, Judge Hovland is very candid. He tells the parties that when that 10-day trial date got closer, he had several other matters that were scheduled, that he could not find another judge to take on this matter, and that he made a decision to try a case that had been pending longer than trying this case. And this is the exact general congestion that the Speedy Trial Act precludes from being an exclusion of the 70-day time period. Now, counsel, wasn't it the judge's opinion, though, that it was not general congestion? Did the court make any finding or declaration to that effect? No, your honor. Judge Hovland's written order references that there was a judicial emergency because of the shortage of judicial resources in the district, but there isn't a finding how that is not general congestion. And that's kind of the position that the government's taking in this matter, is that this court should adopt a separate standard other than general congestion, and that there should be some other standard for congestion caused by a judicial emergency. Of course, as we noted in our reply brief, that almost half, I think, of the districts in the country are under a judicial emergency due to resources. The entire purpose of the Speedy Trial Act is to make the court and the government to focus on the resources available and make choices as to which cases should go forward and which cases shouldn't. And in this case, at the trial, the government was candid when this issue came up and said, well, we could dismiss this without prejudice and take it up again, but we're not going to do that. We're going to proceed and see if we get a conviction and then see how this appeal turns out. And that's exactly what the Speedy Trial Act is designed to preclude. Thank you. So the other issue has to do with the third continuance. Well, the second continuance in this matter was because the government requested a continuance because it alleged in its brief that one of its witnesses were not available. And in responding to that request for a continuance, Judge Hovland, his order does not address the correct subdivision under the statute. So we think that's another grounds of error. And then ultimately, the third continuance was caused because of the government's discovery problems in this matter. And if you look through the brief, Mr. Nodwin, the trial counsel, had all kinds of trouble getting from the government various discovery materials. At one point, the government represented to Mr. Nodwin and the court that everything had been provided. And then subsequently had to acknowledge that there were boxes of documents that had not been provided. And because of that, that was a cascading effect in this case, which ultimately resulted in the third continuance, which was done by Judge Hovland's sua sponte. So I think that besides that, I think the fourth continuance is the cleanest one under the law, that clearly it was because Judge Hovland could not, as he says, try two cases at once because of general congestion in the court system. But I think there are other grounds as well that are outlined in the brief. If there are no other questions, I guess I'll rest on the brief. I have a question, Judge Loken, regarding the Barker issue. It's asserted in the brief that Ms. Johnson was not indicted for 1,275 days. What's the opening date for that? The opening date for the indictment, Your Honor? Yeah, how do you get the... When does the period you're referring to start? I believe, Your Honor, it starts on September 7th of 2017. Oh, I'm sorry, Judge. I think I misunderstood your question. I told you I'm talking Barker work now. Yes. The assertion, which wraps up in the prejudice, is that there was 1,275 days before she was indicted. And I'm trying to find out when that started so I can put it in relation to when Mr. Cook died. Thank you, Your Honor. I believe that that started when she had her first interview with the FBI. But as I'm sitting here today, Your Honor, I don't have that exact date in front of me. Was it before Cook died in 2015 or not? I believe it was, Your Honor. Yes. One of the issues that Mr. Nodland raised is that there was evidence that Mr. Cook had told Ms. Johnson that he had been interviewed by the FBI. And then in Mr. Nodland's attempts of discovery, there was never any documentation of any interviews of Mr. Cook. Thank you. Thank you, Your Honor. Thank you, Mr. Rodnaby. Thank you. Mr. DeLone. Thank you, Your Honor. May it please the court, Chief Judge Smith, Judge Loken, Judge Grondin. My name... Counsel, you just accidentally muted yourself, I think. Sorry, Your Honor. I'm an assistant United States attorney here in North Dakota and I was the trial attorney for this particular matter. And I was also the one to initiate the investigation with my agents and indict the matter. I think in this particular case, listening to the arguments of Mr. Rodnaby, ultimately, everything kind of steers, as far as the speedy trial act violation that's being claimed, to that fourth continuance. There's four continuances, two were by written motion of the United States, and there was the first sua sponte from the judge, which in our brief, we argue that the request from the courts were 10 days in April of 2018, essentially was a without looking farther down the court's calendar. So that continuance was appropriate, but it wasn't filed by any motion of the parties, it was sua sponte issued by the court. The fourth one, Judge Hovland specifically indicates in his statements on the record and in his order, that it was not due to general court congestion. He had at that particular time, and at that particular time, he was almost one full year. Mr. DeLone, before you get into the reasons, I just want to make sure we're in agreement here that at the beginning, 39 days ran on the clock. Is that correct? That's correct, Judge Gorter. And would the government agree that if the fourth continuance is not for an allowable purpose, that we do in fact have a speedy trial act violation here? Potentially, yes, your honor. If the court finds that that was not for an excludable reason, yes, then there would be a speedy trial act violation. Okay, now you can go ahead and go into the reasons. Thank you, your honor. By that period of time, Judge Hovland had been 11 months into a judicial emergency. He was the sole judge in the district, a district that typically has two title three judges and one senior judge handling the trial calendars and the docket. Judge Hovland was handling the entire docket for the state or the district that period of time for 11 months, had been going back and forth from the east side of the state to the west side of the state handling matters, inviting in judges from within the 8th circuit to come in and assist in particular matters, and had done so with a number of cases. It sounds like an argument for a new standard, as opposing counsel said you were doing. I'm not asking for a new standard, your honor. I'm asking for the court to potentially at some point here maybe even look at the fact that... An exception to the general congestion is not an excludable reason, principle. Well, that's what I'm asking, though, for a judge is maybe possibly an exception for a judicial... Do you have case support for an exception? No, your honor, there is no... Or is there a conflict as to whether that's the general, that's the governing principle? That's the principle, but nobody has ever defined general congestion, Judge Olkin. That's what we're potentially asking this court to do, is say what is general congestion and at what point do we surpass general congestion? What dictionary have you gone to to say that what happened here is not general congestion, if there's no case law? In my brief, your honor, I do pull the general definitions for general and congestion from Merriam-Webster, I put in my brief. I also went through and I don't... This is unrelated to the case at hand. That means it's general. Judge, it wouldn't be general congestion in this particular matter because it's extraordinary reasons that the court was under at a particular point in time. Judge Hovland actually indicates on the record that he's thought and personally reached out to 10 judges to come and assist for that August 6th time period. He had 15 cases on... I think everyone would be sympathetic to Judge Hovland's position there. Obviously, very difficult being the only judge in the district, but doesn't the Speedy Trial Act provide a potential remedy by going to the Judicial Council and getting the Judicial Council to do something like that? It does, your honor, and I know one circumstance in the 9th Circuit that a district there did it and sought and received that suspension. I don't know why the district of North Dakota, the judiciary did not seek that suspension from the 8th Circuit. I can only assume that the court believed that there would be enough assistance coming in with visiting judges throughout that time period. However, that wasn't the case. In this particular matter, when the August trial date was coming around, the judge reached out, tried to find 10 people, and trying to find somebody to come in for 10 days potentially is almost impossible, especially on anything short of probably four or five-month notice, and just trying to manage a caseload where Judge Hovland, in his order, indicates when he looked at the cases on schedule for that particular day. Why didn't the government simply tell Judge Hovland we can try it in three days if that's all you have available and there's no other judge? Because during the teleconference, Judge Loken, the party has indicated we could not try it. This is unrecorded, so you're speaking what's not on the record? Right, all it is, it's referred to by Judge Hovland in the record, so he talks about the party's request of 10 days. Okay, but don't tell us what you said in the phone conversation if it's not in the record on appeal. Well, then all I could do is... My question was why didn't the government tell the court before the fourth continuance, when the fourth continuance issue came up, where we're prepared to try the case in three days if that's all the court has available? Judge, because at that point in time when we had the teleconference, I did not believe that we could do it in three days. The trial could not happen within three days, and it would be... As you apparently acknowledged in the district court. Yes, Your Honor, I could have done that, but the judge had already found 10 days down the road. Of course, he then had to move it further beyond that date, but we could have done that, but the judge would have had to found 10 days again at some point in time down the road. We're already on that road of discovery was out. There was over 100,000 documents in this were being tracked and subpoenaed and travel arrangements were being done. It would have been difficult at that time then to ask the court to allow us to dismiss with all prejudice and come back and try to find a date with the court before filing a new indictment in a particular matter. It was just a judicially more expedient to continue on with the dates that the court was I do believe that that fourth continuance, there was no issue with that particular matter because the judge was following the district's trial and calendaring process. In that case, the judge looked at the calendar, took the oldest trial case, took the one that had the most prejudice to the defendant, which is a person that had been sitting 177 days in detention, and took that case and tried it. The judge then found the next available 10-day period, which was in October, which we did commence with trial in October and completed this particular matter. But further on beyond that, Judge, I'm asking the court to consider potentially that there has to be something that transcends beyond the terminology of general congestion. There has to be something that allows the court to say, well, this court was under judicial duress to an extent that they could not possibly be held to a standard that is being applied. I could understand a standard like that if it involves something other than congestion. If it was the pandemic or something that is perhaps an emergency apart from the fact that there are more cases than time. And that's what this seems like. It just seems like there was just too much going on based on the limitation of judicial resource of judges in the area, which is classic congestion. I disagree respectfully, Chief Judge, that it's classic congestion here because you have one judge handling what typically is two full-time judges and a senior judge. As Judge Hovland indicated in one of his orders or his responses, he had 20 to 25 cases on the trial calendar a week at that particular time. You're saying this case would be different if the district had its full complement of judges, but the court was still unable to find the time within the statutory limit? I don't know if the court would not have been able to find the time. If it had another judge and a senior judge, I'm fairly certain that one of the other judges would have been assigned to take one of the cases. But if the level of cases in the problem with this case, how is that different? I mean, it would, I suppose, be better if they had all their judges, but the problem is the same. Well, in this particular circumstance, the judge indicated that he had 12 to 15, I think that's what he indicated, was 12 to 15 cases that were trialed that particular week. The majority of them went away with continuances or joint motions filed by the parties, or they were disposed of by plea agreement. It did come down to essentially, I believe at that time, to two cases. And that other case that went to trial was the oldest one with a person that was in detention. Had that been the case where we had two full-time judges and a senior judge, one of the other judges could have easily... Wait a minute. Congress only provided two judges. Don't keep talking about a senior judge. They're irrelevant in this debate. Agreed, Judge Loken, but even if you had that other judge and you got it down to, whittled it down to two cases, the other judge could have taken one of the cases forward to trial while Judge Hovland handled whichever one he deemed to be the one that he was going to retain. Let me go back to statutory construction. Do you agree that this issue turns on the plain meaning of the two words general congestion in 18 U.S.C. 3161 H7C? Yes, Your Honor. I do. I do. And I believe that there has to be some sort of a scenario that does allow a public court to look at the situation and the scenario and say... That's not a plain meaning argument. Well, Your Honor... If you want an exception, go to Congress. We have to follow the plain meaning of what Congress has enacted. Exactly, Judge, but the plain meaning of general congestion is just your general run-of-the-mill congestion. This was beyond that. This was extraordinary. This was a court in duress. There's got to be a scenario where a court in duress has some sort of ability to or some ability for the 8th Circuit to look at and say, look, this is a different scenario. This is not your run-of-the-mill general congestion. This goes beyond that. This goes beyond what Congress even discussed. And in the legislative comments that I looked at and referred to in my brief, the legislature did talk about there may be scenarios where a case has to be preceded before another and one gets pushed back apart of the bat. They don't go on to define general congestion and they continue to use that terminology, but they do suggest that there could be something more than general congestion that causes a case to be pushed back in time. I'm inviting the court to look at that and take what the legislature is giving us as an ability to say, look, this is a very rare circumstance. This doesn't happen nationwide. And I understand Mr. Rodney's argument that the judiciary districts are under a judicial emergency. That's a little bit different when in a judicial district where you have 10, 15, 20 Title III judges compared to one where you have two and you lose one. You're down to one for an entire district. That's a whole different animal. That's losing half your complement of judicial Title III judges. So it's more extraordinary. Given that Ms. Johnson was sentenced to time served, if we were to find a Speedy Trial Act here, does the government have a position as to whether we should remand with directions to dismiss with or without prejudice? Well, your honor, I think that would be probably the manner in which the court would have to proceed is to remand with orders or directions for the court to determine whether or not to dismiss with or without prejudice. At that point in time, the court could then turn around and was a time served. I'm not sure the court would probably do that because we can do it. I think the question was whether we should do it. I actually think Judge Loken that it would be probably cleaner for the remand to go back to the district court for the district court to make those particular findings. One thing I want to go on to is Judge Loken, you asked Mr. Rodney about the start date for what the defense was talking over 1,000 days. I believe that was the target letter date when we sent a target letter to Ms. Johnson and her counsel, and that was in February of 2014. That's not uncommon for a target letter to go out to defendants or sub targets. At the very beginning of an investigation before the investigation is even remotely complete, if they're identified as a target, there's an opportunity then to offer them the opportunity to cooperate in a particular matter. In this particular case, going through the testimony of Inspector Urban from the trial transcripts, witnesses were being interviewed well into 2016 on this particular matter. There was four different cases kind of touching on this particular matter. You had the whole fraud themselves. You had this particular matter. You had a gun possession issue. Your time is exhausted. Do you have a quick point you're trying to make? No, Your Honor. I was just trying to indicate that this would have went beyond even when Mr. Cook had passed away before there would have been an indictment regardless of the situation. She was just targeted early on because she was identified. I would ask the court to motion denying the order to dismiss or the motion to dismiss this particular matter and rest on the briefs. Thank you. Mr. Roggeby, do you have any rebuttal? You need to unmute your mic. Thank you, Your Honor. I apologize. Judge Locke and I agree with Mr. DeLorem that the start time that we referenced in the brief was the target letter on February 28, 2014. It appears now that the government has conceded that this case turns on whether or not this is general congestion. There's no true emergency here, right? There is case law for true emergency exigent circumstances, but this isn't an exigent circumstance. This is a situation where the criminal matters that the court system can accommodate. In all of the cases that we cite in the brief, based on general congestion, it's the exact same specific issue, which is the trial judge can't try two cases at once. This is not an unusual situation and it's based 100% on judicial resources. What the government is failing to understand is that the government, the U.S. Attorney's Office, they have an obligation to follow the act as well. This isn't just the judiciary that has this responsibility. The U.S. Attorney's Office has this responsibility. Part of what the act is designed to do is to focus the U.S. Attorney's attention to those matters which are most important. Here, that was not done. That was concurring opinion in U.S. v. Taylor. He indicates that the statute is not ambiguous. There's no need to go to legislative history that the words in the statute mean what they say. This is, as Judge Loken mentioned, general delay. The problem with trying to create a different standard for ungeneral delay is what's the limiting principle? I'm not sure that it exists, and at that point, I think the court creates a lot of confusion where Congress did not intend for there to be that kind of confusion. Our view is that this matter should be dismissed based on a violation of the Speedy Trial Act, that the act has, in fact, been violated. Then the question becomes whether or not it should be dismissed with prejudice or without prejudice. We believe in this situation, it should be dismissed with prejudice. The support for that is the U.S. v. Clymer case and the U.S. v. Valesquez case that I cite. The standard that the court applies is the seriousness of the offense, the circumstances of the case, and the impact on the administration of the act and the administrative of justice. And clearly... Counsel, the decision for the dismissal to be with or without prejudice, is that a decision for this court or for the district court in the first instance? I think that generally the case law suggests that it's for the district court, but there, and we cite the cases in the brief, the case law suggests that there is a role for this court and that a remand of this nature should be, they should be rare. So we think on the facts of this that this is a case where it should be dismissed with prejudice and that this court should exercise that authority. And that's what we are requesting the court to do. Thank you. Thank you, Mr. Ruggeby. Thank you also, Mr. DeLorme. We appreciate both counsel's participation and argument this morning in helping us clarify the facts and issues in this case. We will take the case under advisement and render a decision in due course. Thank you.